```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
WILLIAM SCALES,                                                    :
                                                                   :
                                    Plaintiff,                     :
                                                                   :          21 Civ. 8142 (JPC)
                 -v-                                               :
                                                                   :          OPINION AND ORDER
NEW YORK HOTEL AND MOTEL TRADES                                    :
COUNCIL, LOCAL 6,                                                  :
                                                                   :
                                    Defendant.                     :
                                                                   :
-------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

*Pro se* Plaintiff William Scales brings a claim for breach of the duty of fair representation against his union, the New York Hotel and Motel Trades Council Local 6 ("Local 6"),[1] related to the placement of his 401(k) contributions into Local 6's plan. Local 6 has moved to dismiss, arguing that Scales's claim is barred by the statute of limitations and, alternatively, that Scales has failed to state a claim. *See* Dkts. 59-61. Although the Court cannot on the current record resolve whether Scales's claim is timely, Scales has failed to allege that Local 6's conduct was arbitrary, discriminatory, or in bad faith, as required to plausibly plead a breach of the duty of fair representation. The Court therefore grants Local 6's motion and dismisses the Second Amended Complaint. The dismissal is without prejudice to Scales filing a Third Amended Complaint in the event he is able to cure the pleading defects discussed herein.

---

[1] Scales refers to Defendant interchangeably by a number of names including "HTC," "Local 6," and "Local 6 401K/pension department." Dkt. 53 ("Second Am. Compl.") at 4, Exh. 1 at 1-2. For the sake of clarity, the Court refers to Defendant solely as "Local 6."

## I. Background

A.      **Factual Background**[2]

Scales is a former and possibly current employee of the Ace Hotel New York (the "Ace Hotel"). Second Am. Compl., Exh. 1 at 1; *accord* Dkt. 70 at 2. In 2012, Scales was laid off from his employment with the Ace Hotel. Second Am. Compl., Exh. 1 at 1. At around the same time, Local 6 took over as the new union to represent Ace Hotel employees. *Id.* Employees at the Ace Hotel were then given thirty days to select either the Ace Hotel's or Local 6's 401(k) pension plan. *Id.* This thirty-day period apparently occurred while Scales was laid off, and Scales was not informed of the opportunity to select one of the two plans. *Id.*

At some point Scales returned to work at the Ace Hotel, and the hotel "gave [him] a form to choose a retirement plan and [he] picked the employer plan." *Id.* He was then "told [he] would be on the hotel 401(k) plan." *Id.* In 2018, he contacted Local 6's "401k/pension department" after he learned from the Ace Hotel that Local 6 "was the current receiver of [his] 401k contributions." *Id.* Local 6 told Scales that his 401(k) had "defaulted into the union's pension plan and this had occurred when [he] was laid off." *Id.* Scales subsequently filed a complaint with Local 6 and waited "weeks upon weeks" before Local 6 informed him it could not assist him. *Id.* at 2. Local 6 advised Scales that he would need to "retrieve the money from Ace Hotel." *Id.* Scales then requested that Local 6 "provide [him with] a free attorney from the benefit department in order to retrieve the funds." *Id.* Local 6 again informed Scales that it would not be able to assist him because "the 401k contract was created before [L]ocal 6 . . . was the active union and voted into

---

[2] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Second Amended Complaint. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiffs' favor").

2

the building." *Id.* Additionally, according to Scales, Local 6's "lack of record keeping resulted into a debate over the amounts of the contributions that were missing." Second Am. Compl. at 6.

Scales then contacted the Ace Hotel, which informed him that Local 6 was receiving his 401(k) contributions and was "withholding [his] contributions," and for that reason, "[A]ce [H]otel corporate would not assist further." *Id.*, Exh. 1 at 2. But then human resources at the Ace Hotel "attempted to contact [Local 6's] pension department on [Scales's] behalf and request and ushered an agreement that going forward [Scales] would receive all contributions into a [Local 6] provided 401k." *Id.* Scales, however, "didn't accept this offer." *Id.*

Scales proceeded to engage in "mediation attempts" which spanned for "at least an entire year." *Id.* During these attempts at mediation, the "only effort in resolving [Scales's] issue [came] from [Scales] and [A]ce [H]otel hr." *Id.* Local 6 "never investigated any contracts or held an arbitration motion on [Scales's] behalf." *Id.* Local 6 did email Ace Hotel to confirm that Scales had a 401(k) plan, but otherwise "never investigated or retrieved any contracts, attempted any mediation attempts, or arbitration motions on [Scales's] direct behalf to address" his situation. *Id.* Because Scales's 401(k) funds are held by Local 6, his "pension is fixed and [he] cannot withdraw money from it." *Id.* at 2-3.

Scales claims that his 401(k) "is worth $400,000 plus interest and is currently misplaced and attempted to be lowered." Second Am. Compl. at 6. He further states that he has "missed opportunities," which has caused him to lose "financial opportunities and living arrangements," because his 401(k) "is intended to produce activity for 2 corporations, and 40 sole proprietor businesses." *Id.* As relief, he seeks "$1,400,000 plus all interest that would have accumulated" with the Ace Hotel's 401(k) plan. *Id.*

B.  **Procedural Background**

Scales initiated this action on August 25, 2021 in New York County Supreme Court. Dkt. 4 ("Notice of Removal") ¶ 5. Local 6 removed the case to this District in early October 2021. *Id.* Following the onset of an arbitration related to Scales's underlying claims, the Court stayed this case until January 3, 2022. Dkt. 12 at 4. On January 4, 2022, the Court set a briefing schedule for Local 6's motion to dismiss and stayed discovery pending resolution of that motion. Dkt. 16.

Local 6 filed its motion to dismiss the original Complaint on February 15, 2022. Dkts. 37-39. On March 25, 2022, Scales sought an extension of time to respond to that motion and further requested leave to file an amended complaint. Dkt. 46. After the Court granted leave, Dkt. 50, Scales filed the First Amended Complaint on April 11, 2022. Dkt. 51. Without leave of Court, however, Scales then filed the Second Amended Complaint on April 18, 2022. Dkt. 53. The Court subsequently granted *nunc pro tunc* leave to file that pleading on April 20, 2022 with Local 6's consent. Dkt. 56.

Local 6 filed its pending motion to dismiss the Second Amended Complaint, along with supporting documents, on May 2, 2022. Dkts. 59-61. Scales filed an opposition to that motion on May 27, 2022. Dkt. 70. Local 6 filed its reply on June 10, 2022. Dkt. 71.

## II. Standard of Review

A.  **Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual

4

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475-76 (2d Cir. 2009).

The Court must construe *pro se* submissions "liberally" and interpret them "to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam) (internal quotation marks omitted). But a *pro se* complaint still "must state a plausible claim for relief." *Id*. (internal quotation marks omitted). "Even in a *pro se* case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).

**B.     Statute of Limitations**

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove" under Federal Rule of Civil Procedure 8(c)(1). *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (internal quotation marks omitted). However, because on a motion to dismiss a court must accept all of the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, *Biro*, 807 F.3d at 544, dismissal on statute of limitations grounds at the motion to dismiss stage is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to

relief." *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 369 (E.D.N.Y. 2012) (internal quotation marks omitted) (quoting *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989)). In other words, "the Court can only grant a motion to dismiss based on statute of limitations grounds if there is no factual question as to whether the alleged violations occurred within the statutory period." *Id*.

### III. Discussion

#### A.   The Nature of Scales's Claim

The Second Amended Complaint is not entirely clear as to the nature of Scales's claims or the legal authority upon which he relies. However, section 301 of the Labor Management Relations Act ("LMRA") provides for "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . ." 29 U.S.C. § 185(a). This case was removed from state court on the basis of section 301, Notice of Removal ¶¶ 18-20, because section 301 is accorded an "unusual pre-emptive power" that creates federal jurisdiction even when a complaint "makes no reference to federal law and appears to plead an adequate state claim," *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 122 n.16 (1994)). Section 301 also preempts state law claims when those claims are "substantially dependent" on the terms of agreement in a labor contract. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). When a claim involves the alleged breach of such a labor agreement, the claim is "substantially dependent" on the agreement's terms. *See Nelson v. Working Class, Inc.*, No. 99 Civ. 8854 (HB), 2000 WL 420554, at *2 (S.D.N.Y. Apr. 18, 2000).

Scales alleges that Local 6 "caused a breach of contract" by failing to correctly allocate his 401(k) contributions. Second Am. Compl. at 5. While Scales has failed to provide the Court with

6

the relevant contract, Local 6 has submitted a Memorandum of Agreement ("MOA"), which Local 6 maintains is an October 26, 2012 agreement "between the Union and Ace Hotel setting forth the initial terms and conditions of employment for Ace Hotel employees represented by the Union." Dkt. 60 ¶ 4; *see* Dkt. 60-1 ("MOA").  Exhibit C of the MOA is a "List of Employees to be Severance" and includes the name "William Scale."  MOA, Exh. C; *see* MOA ¶ 17 ("The employees identified in Exhibit C shall each be offered the option of (i) layoff with a right to recall or (ii) severance . . . , in exchange for a waiver of recall and rehire rights and execution of a general release in favor of the Hotel.").  Further, the agreement states that "Current Employees shall be entitled to elect, at the employee's sole discretion, within thirty (30) days of the date on which the Industry Pension Plan gives a presentation, to either participate in the Hotel's plan or be covered by the Industry Pension Plan." MOA ¶ 10(b).  This appears to be the provision Scales refers to in the Second Amended Complaint when he alleges that Local 6 "caused a breach of contract by not contacting me when my authority was required to maintain my 401k plan." Second Am. Compl. at 5; *see also id.*, Exh. 1 at 1 ("At [the time Local 6 became the union for Ace Hotel employees], there was a 30 day period for employees to pick the union's pension or the employer's plan.  I was not notified of this period.").  Because the MOA therefore is referenced in the Second Amended Complaint and forms the basis of the claims in that Complaint, the Court considers it in resolving the motion to dismiss. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("[E]ven if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on [a motion to dismiss]." (internal quotation marks and alterations omitted)).

      Scales's purported "breach of contract" claim is asserted against his union, Local 6, but the MOA was between Local 6 and Scales's employer, the Ace Hotel, not between Scales and his

7

union.  Such claims are considered "hybrid claims" which are made up of a claim under section 301 against an employer and a claim for breach of the duty of fair representation against the union for failure to adequately represent the employee in remedying the breach of the collective bargaining agreement.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983) (explaining that a claim for breach of a collective bargaining agreement is a "hybrid § 301/fair representation claim" with the section 301 claim brought against the employer and the fair representation claim against the union); *see also Martinez v. SEIU Loc. 32BJ*, No. 18 Civ. 3961 (JMF), 2019 WL 1259381, at *3-4 (S.D.N.Y. Mar. 19, 2019) (examining a hybrid claim).

Scales's allegations therefore present a federal claim against Local 6 for breach of the duty of fair representation.  "The National Labor Relations Act imposes a federal duty of fair representation on unions to act on behalf of their members without hostility or discrimination in complete good faith and honesty to avoid arbitrary conduct."  *Bryant v. Am. Fed'n of Musicians of the US & Canada*, No. 14 Civ. 2598 (PAC) (HBP), 2015 WL 7301076, at *3 (S.D.N.Y. Nov. 18, 2015), *aff'd*, 666 F. App'x 14 (2d Cir. 2016) (internal quotation marks and alterations omitted). State law claims are preempted by a duty of fair representation claim if they "impose[] an obligation on the union already imposed by the duty of fair representation."  *Id.* (quoting *Walsh v. Int'l Bhd. of Elec. Workers Loc. 503*, 62 F. Supp. 3d 300, 303 (S.D.N.Y. 2014)).  Scales's claim that Local 6 has inadequately represented him in seeking the release of his 401(k) funds is thus properly, and only, a federal claim against Local 6 for breach of the duty of fair representation, as it is premised on the union's obligation to fairly represent him in seeking redress from his employer under the MOA.  *Id.* ("Plaintiff's state law claims for breach of fiduciary duty—premised on allegations of bad faith . . . and inadequately representing her interests as a union member—are subsumed by the duty of fair representation.").

For those reasons, the Court construes the Second Amended Complaint as bringing a claim for breach of the federal duty of fair representation.

**B.      Statute of Limitations**

Local 6 first contends that Scales's claim is time-barred. Dkt. 61 at 10-13. Claims for a union's breach of the duty of fair representation are subject to a six-month limitations period. *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014). "In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiffs *knew* or reasonably *should have known* that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." *Id.* (quoting *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995)). "Further the law in this Circuit is well settled that a continuous or ongoing failure by the union to represent a plaintiff after the plaintiff knows or should know of the breach does not toll the statute of limitations." *Strassberg v. N.Y. Hotel & Motel Trades Council*, 31 F. App'x 15, 17 (2d Cir. 2002).

Here, the statute of limitations began to run when Scales first learned that Local 6 would not assist him in retrieving his 401(k) contributions.[3] *See Hosokawa v. N.Y. Loc. of Screen Actors Guild-Am. Fed'n of Television & Radio Artists*, 745 F. App'x 433, 434 (2d Cir. 2018) ("Even if Plaintiff entertained hopes of future representation by the Union, she knew that it had done nothing as of October 3, 2013 to pursue her grievance. This knowledge was sufficient to start the statute of limitations running." (alterations omitted) (quoting *Cohen*, 68 F.2d at 68)). This occurred when, as alleged, a representative of Local 6 "informed [Scales] that [Local 6] would not be able to assist" him, and further "notified [Scales] that [L]ocal 6 would not be able to assist [him] with any

---

[3] Any claim related to the failure in 2012 to obtain Scales's election between the two available 401(k) options occurred over eight years prior to the commencement of this action, and therefore is clearly time-barred.

representation." Second Am. Compl., Exh. 1 at 2. Scales further contends that Local 6 "never investigated any contracts or held an arbitration motion on [his] behalf over the course of mediation attempts" and that "[t]he only effort in resolving this issue has come from [him] or [A]ce [H]otel [human resources] upon [his] request." *Id.*

The Second Amended Complaint, however, lacks clear allegations of when Local 6 engaged in most of these acts or otherwise conveyed that it would not assist Scales in retrieving his funds. The most revealing timing allegation is that the "mediation attempts"—for which Local 6 did not assist Scales— "spanned for at least an entire year." *Id.* But the Second Amended Complaint does not state the starting point for this "entire year" of non-assistance. Nor does the Second Amended Complaint allege whether any actions by Local 6 prior to mediation indicated that the union was not assisting Scales's efforts to retrieve his 401(k) contributions or when any such actions occurred.[4] Therefore, all the Court has before it is the allegation that there was "at least an entire year" of non-assistance. Because the Second Amended Complaint was filed on April 18, 2022, this necessarily places the start of the mediation, and thus Local 6's denial of assistance at least as to the mediation, at least as far back as April 2021, if not earlier. While that conduct would be outside the six-month statute of limitations if the only pleading were the Second Amended Complaint, the original Complaint was filed in state court on or about August 25, 2021. Notice of Removal ¶ 5.

The Court therefore turns to whether the Second Amended Complaint "relates back" to the original Complaint. Assuming the Second Amended Complaint "relates back" to the original

---

[4] Local 6 argues that because Scales alleges that he first contacted Local 6 "around 2018" Second Am. Compl., Exh. 1 at 1, the Second Amended Complaint should be read to place all of the Local 6's alleged conduct in that year. Dkt. 61 at 10. But the Second Amended Complaint's allegations are unclear as to the length of time over which the subsequent alleged communications between Scales and Local 6 took place. Second Am. Compl., Exh. 1 at 1-2.

10

Complaint, the action would be timely if Scales's claim accrued on or after February 25, 2021. Federal Rule of Civil Procedure 15(c)(1) provides: "An amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." This rule "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Scales's Second Amended Complaint asserts a claim arising from the same conduct as his original Complaint. The original Complaint alleged that Local 6 notified Scales that he "was automatically defaulted into the union's pension credit earning plan," that he "didn't have any contributions and needed to contact [his] employer Ace Hotel," and that he "attempt[ed] to resolve this matter" with Local 6 and the Act Hotel. Notice of Removal, Exh. A at 2. The original Complaint therefore sets out, or attempts to set out, the same failure to assist theory that is the basis of the Second Amended Complaint.

Having determined that the Second Amended Complaint relates back to the original Complaint, the next question therefore is whether the original Complaint is timely. *See Bradley v. Nolan*, No. 03 Civ. 1616 (GBD), 2007 WL 959160, at *2 (S.D.N.Y. Mar. 30, 2007) ("[T]he relation back doctrine is inapplicable where . . . the original complaint itself is untimely."). As noted, to be timely, Scales's claim must have accrued on or after February 25, 2021. But as also noted, the timeline that Scales provides in his pleadings is muddied to say the least. Moreover, Scales is somewhat inconsistent between his original Complaint and the Second Amended Complaint as to when exactly Local 6 told him it would not assist him. The Second Amended Complaint indicates that the activity—*i.e.*, Local 6's refusal to assist during mediation—may have

11

occurred as late as April 2021.  But the original Complaint, which was filed in August 2021, alleges that Scales "wasn't notified of" the fact that his employer was receiving his 401(k) payments "until about last year," which seems to suggest some time in 2020.  Notice of Removal, Exh. A at 2.

Neither the original Complaint nor the Second Amended Complaint clearly indicates that Scales's claim accrued within six months prior to the commencement of this action on August 25, 2021.  But crediting the allegations in the Second Amended Complaint, and drawing all inferences in favor of this *pro se* plaintiff, it is at least plausible that his claim could have accrued as late as April 2021, which would have been less than six months prior to the filing of the original Complaint in state court.  Without question, Local 6 is correct to fault Scales's pleadings for lacking specificity as to relevant dates, which makes the statute of limitations analysis particularly challenging at this stage.  *See* Dkt. 61 at 10.  And after the development of facts in discovery, it may become clear that Scales's claim is in fact time-barred.  But at this stage of the litigation, with the general vagueness of Scales's allegations as to when certain events occurred and the possibility that his claim may be timely, the Court will not dismiss Plaintiff's Second Amended Complaint as time-barred.  *See Clement*, 914 F. Supp. 2d at 369 (explaining that dismissal on statute of limitations grounds at the motion to dismiss stage is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief" (internal quotation marks omitted) (quoting *Ortiz*, 867 F.2d at 148)).  Local 6 may assert a statute of limitations defense later in this case upon further development of the record and assuming Scales is able to amend his pleading to resolve the deficiencies identified *infra*.  *See Rachunow v. Jamieson*, No. 20 Civ. 5627 (PKC), 2021 WL 1894206, at *5 (S.D.N.Y. May 11, 2021) ("[T]he Court does not need to resolve the issues that arise from plaintiff's inconsistent pleading of dates.  Defendant is not foreclosed from asserting a statute-of-limitations defense at

trial.").

### C. Breach of the Duty of Fair Representation

To plead a hybrid section 301/duty of fair representation claim, a plaintiff must allege "(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-à-vis the union members." *Martinez*, 2019 WL 1259381, at *3 (quoting *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001)). The duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith," *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 388 (2d Cir. 2015), and those actions have a "causal connection" to a union member's injuries, *White*, 237 F.3d at 178 (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1988)). *See Jenkins v. Collins Bldg. Services, Inc.*, No. 10 Civ. 6305 (AKH), 2013 WL 8112381, at *6 (S.D.N.Y. Oct. 17, 2013) ("A plaintiff . . . who claims that a union breached its duty of fair representation by failing to pursue a grievance must allege some facts suggesting that the union's conduct was arbitrary, discriminatory or in bad faith."). "This high standard reflects that judicial review of union action 'must be highly deferential, recognizing the wide latitude that unions need for the effective performance of their bargaining responsibilities.'" *Fleischer v. Barnard Coll.*, No. 19 Civ. 10738 (RA), 2020 WL 7360251, at *4 (S.D.N.Y. Dec. 15, 2020) (quoting *Spellacy*, 156 F.3d at 126 (2d Cir. 1998)), *aff'd*, 2021 WL 5365581 (2d Cir. Nov. 18, 2021).

Union action is "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be

irrational." *Air Line Pilots Ass'n-Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation marks and citation omitted); *see Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998) ("A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation."). "This 'wide range or reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez*, 525 U.S. at 45-46. A union's action is discriminatory "when substantial evidence indicates that it engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (internal quotation marks omitted). And "[a] union acts in bad faith when it acts with an improper intent, purpose, or motive." *Spellacy*, 156 F.3d at 126. "A showing of bad faith requires a showing of fraudulent, deceitful, or dishonest action." *Fleischer*, 2020 WL 7360251, at *5 (internal quotation marks and brackets omitted). "Decisions of a tactical nature, errors of judgment, or negligent actions do not amount to bad faith." *Id.; see also Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43-44 (2d Cir. 1989).

Scales has failed to allege arbitrary, discriminatory, or bad faith conduct. The Second Amended Complaint contends that when Scales contacted Local 6's "401k department," the department "forwarded" him to another agent of Local 6. Second Am. Compl., Exh. 1 at 1. That agent then invited Scales to "come in and fill out a complaint form." *Id.* at 2. Weeks later, Local 6 informed Scales that it could not assist him. *Id.* Local 6 further told Scales it could not provide him with legal representation "[a]fter consideration" because the "401k contract was created before [L]ocal 6 . . . was the active union and voted into the building." *Id.* But even after Local 6 informed Scales it would not assist him, the Ace Hotel and Local 6 apparently presented Scales with "an agreement that going forward [he] would receive all [401(k)] contributions into a [Local

14

6] provided 401k." *Id.*[5] Scales did not accept this agreement. *Id.*

In this context, a union acts arbitrarily "in failing to initiate or process a grievance when it 'ignores or perfunctorily presses a meritorious claim.'" *Thomas v. Little Flower for Rehab. & Nursing*, 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 16 (2d Cir. 1993)). But a union does not act arbitrarily when it "fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F. 3d 1148, 1153-54 (2d Cir. 1994); *accord Messina v. 1199 SEIU United Healthcare Workers E.*, 453 F. App'x 25, 27 (2d Cir. 2011) ("A union's [duty of fair representation] is not breached where the union fails to process a meritless grievance, fails to process a grievance due to error in evaluating its merits, . . . engages in mere negligent conduct or errors in judgment, . . . or decides not to arbitrate a grievance." (internal citations omitted)).

Here, as alleged, Local 6 provided Scales a reason for its inability to further investigate or pursue his grievance related to his 401k payments: it believed that it could not do so "because the 401k contract was created before [Local 6] was the active union," a conclusion reached "[a]fter consideration." Second Am. Compl., Exh. 1 at 2.[6] Local 6's determination that it could not pursue

---

[5] The Second Amended Complaint is unclear as to Local 6's role in creating this agreement.

[6] Scales's opposition to dismissal lays out further efforts undertaken by Local 6 on his behalf. Since the start of this litigation, Local 6 "made an arbitration attempt" with Scales's employer which was unsuccessful. Dkt. 70 at 2. Local 6 engaged in "investigative effort . . . after they lost the arbitration proceeding." *Id.* at 3. Apparently at some point during that arbitration proceeding, "the arbitration process was adjourned" and "that allowed [Local 6's counsel] to further investigate" though counsel "was unprepared" for the "[second] portion of the arbitration proceeding." *Id.* Following that proceeding, counsel "has attempted a very small investigative effort in hopes of appealing the arbitration decision." *Id.* These contentions would further undermine any violation of the duty of fair representation, as they reflect Local 6 undertaking even more efforts in pursuit of Scales's grievance. *See Sales v. Clark*, No. 14 Civ. 8091 (PAC) (MHD), 2015 WL 7731441, at *5 (S.D.N.Y. Sept. 16, 2015) (concluding that the plaintiff failed to allege arbitrary union action, in the context of a Title VII claim, where the union's counsel at an

an attempt to transfer Scales's 401(k) out of the union plan, correct or not, does not rise to the level of arbitrariness as it reflects a reasonable interpretation of the MOA prohibiting such a transfer.[7] *See* MOA ¶ 10(a) ("No Current Employee who participates in the Industry Plan may switch to the Hotel's plan."); *see also Tavarez v. 32BJ*, No. 18 Civ. 8517 (CM), 2019 WL 5683370, at *2 (S.D.N.Y. Nov. 1, 2019) ("Th[e] wide range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong."); *Watkins v. First Student, Inc.*, No. 17 Civ. 1519 (CS), 2018 WL 1135480, at *13 (S.D.N.Y. Feb. 28, 2018) (dismissing a breach of the duty of fair representation claim where the plaintiff alleged no facts making it plausible that the union was not simply "exercising its prerogative to not advance a grievance it may well have deemed unlikely to succeed"); *Cappelli v. Jack Resnick & Sons, Inc.*, No. 13 Civ. 4381 (GHW), 2014 WL 4188084, at *6 (S.D.N.Y. Aug. 22, 2014) (dismissing a claim for a breach of the duty of fair representation where the union determined after investigation that the plaintiff's claims lacked merit); *cf. Martinez*, 2019 WL 1259381, at *4 (holding that the plaintiff did not allege a plausible inference that the union acted arbitrarily where he did not allege

---

arbitration proceeding was unprepared and performed poorly because such allegations pled only negligence), *report and recommendation adopted by* 2015 WL 7736548 (S.D.N.Y. Nov. 30, 2015).

"A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). However, since this rule is based in "policy reasons favoring liberal construction of *pro se* complaints," *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998), the Court analyzes Plaintiff's Second Amended Complaint on its face in deciding Local 6's motion to dismiss.

[7] Scales himself refers to this conduct as negligence. Second Am. Compl. at 5 (alleging that Local 6 "also committed multiple accounts of neglect from 2012-2021"). But as noted, a union does not act arbitrarily when it "engages in mere negligent conduct" in handling a grievance. *Cruz*, 34 F. 3d at 1154; *see Jourdain v. Serv. Emps. Intern. Union Loc. 1199*, No. 09 Civ. 1942 (AKH), 2010 WL 3069965, at *4 (S.D.N.Y. July 28, 2010) (noting that the plaintiff's amended complaint referred to the failure to pursue a grievance as negligent in granting summary judgment to the union).

16

(1) a failure to investigate his grievance at all, (2) that the union misled him into believing it was proceeding with his grievance while not actually doing so, (3) that the union failed to appraise him of a grievance hearing, or (4) that the union grossly misunderstood the evidence underlying his grievance).

Nor are there any allegations in the Second Amended Complaint giving rise to an inference that Local 6 acted in a discriminatory or bad faith manner.  For instance, Scales does not allege that he was the victim of unlawful or invidious discrimination.  Nor does he allege any conduct by the Local 6 that would suggest the union was behaving in bad faith in its treatment of his 401(k) contributions.

Therefore, because Scales has failed to allege that Local 6's actions were arbitrary, discriminatory, or taken in bad faith, he has not plausibly alleged a breach of the duty of fair representation.  The Court therefore grants Local 6's motion to dismiss the Second Amended Complaint.  Because the Court dismisses on these grounds, it does not reach the other requirements for finding liability for a breach of the duty of fair representation, *i.e.*, whether the Second Amended Complaint alleges a breach of the relevant collective bargaining agreement and whether Local 6's conduct caused Scales's injuries.  *See Martinez*, 2019 WL 1259381, at *4 n.5 (declining to reach the question of whether the plaintiff adequately pleaded that his employer breached a collective bargaining agreement where he failed to plead that the union breached its duty).

### D. Leave to Amend

Lastly, the Court considers whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Scales has not asked the Court for leave to amend his Second Amended Complaint.  "But even when a party does not ask for leave to amend, the Court may grant leave to

amend *sua sponte*." *In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022) (citation and internal quotation marks omitted) (collecting cases). When deciding whether to *sua sponte* grant leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility." *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020). After considering these factors, the Court will grant Scales leave to file a Third Amended Complaint, in the event he believes he can plead facts that would adequately state a claim upon which relief may be granted. While the operative complaint is Scales's Second Amended Complaint, that complaint is essentially just a properly filed version of the First Amended Complaint, which was filed seven days prior. *See* Dkt. 51. Plaintiff has therefore only once amended the actual factual allegations of his pleading. Nothing indicates that he sought that prior amendment in bad faith. Moreover, with discovery having not yet occurred, this case "is still in its infancy, [so] there would be minimal prejudice to Defendant in permitting Plaintiff to make one final amendment." *Morales*, 2020 WL 2766050, at *10. The Court emphasizes, however, that Scales should amend only if he is able to resolve the pleading deficiencies outlined in this Opinion and Order and is able to plead facts demonstrating that Local 6 has acted arbitrarily, discriminatorily, or in bad faith.

## IV. Conclusion

For the reasons stated above, Local 6's motion to dismiss is granted and the Second Amended Complaint is dismissed without prejudice. In the event Scales decides to file another amended complaint, he must file it within thirty days of this Opinion and Order. If Scales fails to file a Third Amended Complaint within thirty days, and does not show good cause to excuse the failure to do so, the Court will dismiss this action with prejudice. The Clerk of Court is respectfully

directed to close the motion pending at Docket Number 59.

    SO ORDERED.

Dated: February 6, 2023
       New York, New York

                                            JOHN P. CRONAN
                                   United States District Judge